IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ANTHONY M. NICASTRO,<br><br>Plaintiff,<br><br>vs.<br><br>KNIGHT MACKAY MORROW, LLC, formerly known as Knight Nicastro MacKay, LLC,<br><br>Defendant. | CV 26-47-BLG-SPW<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

Defendant Knight Mackay Morrow, LLC filed a Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 25), arguing that dismissal is required under Federal Rule of Civil Procedure 12(b)(2) because this action does not arise from any of its contacts with Montana. Plaintiff Anthony M. Nicastro opposes the Motion, contending that this Court possesses specific personal jurisdiction over Defendant. (Doc. 26). The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 25–26, 28).

For the following reasons, the Court grants Defendant's Motion.

## I. Background

Defendant is a Colorado limited liability company ("LLC") governed by an operating agreement and organized for the purpose of "provid[ing] professional legal services." (Doc. 20 at 1–2; Doc. 15-1 at 2–4). Plaintiff was an equity member of

the firm from its inception in 2017 until his disassociation on January 5, 2026. (Doc. 20 at 3). Throughout this period, Plaintiff—a Montana resident and attorney—provided legal representation under Defendant's name and brand in Montana. (*Id.* at 1, 3).

On April 24, 2025, the firm's five equity members attended a virtual meeting via either telephone or Microsoft Teams. (Doc. 26 at 9; Doc. 25 at 7; Doc. 15-2 at 1; Doc. 15-3 at 1). During that meeting, a member proposed reallocating ownership interest in the LLC, which would reduce Plaintiff's interest by 50%. (Doc. 20 at 5). Following an afternoon email exchange, the equity members voted on the proposal. (Doc. 25 at 8; Doc. 26 at 10; Docs. 15-2, 16-2–16-5). Every vote cast was in favor of the proposal. (Doc. 25 at 8; Doc. 26 at 10; Docs. 15-2, 16-2–16-5). Afterward, four of the five equity members signed a resolution adopting the proposal. (Docs. 15-2–15-4). None of these events occurred in Montana. (Docs. 16-2–16-5).

Because no physical location was designated for the April 2025 meeting, the operating agreement dictates that the meeting took place in Boulder, Colorado, with members attending remotely as permitted by the agreement. (Doc. 15-1 at 4, 10–11; Docs. 15-2, 16-2–16-5). No votes were cast in Montana, the resolution was not signed in Montana, and no equity members traveled to Montana to discuss the matter with Plaintiff. (Docs. 16-2–16-5). Instead, all communications with Plaintiff regarding the proposal and resolution occurred electronically. (Docs. 16-2–16-5).

Following his January 5, 2026 departure, Plaintiff filed this breach of contract action on March 13, 2026, in the Yellowstone County District Court. (Doc. 1-2). Defendant removed the case to this Court on May 15, 2026 (Doc. 1), and Plaintiff filed an Amended Complaint on June 30, 2026 (Doc. 20). Under the single count for breach of contract, Plaintiff seeks compensatory damages for his "contractually entitled" 2025 and 2026 profits, the balance of his capital account, prejudgment and postjudgment interest, and attorney's fees and costs. (Doc. 20 at 7).

## II. Legal Standard

Personal jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(2), which authorizes dismissal when a court lacks authority over a defendant. When a defendant moves to dismiss on this ground, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Where . . . the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (citing *Sher*, 911 F.2d at 1361).

In resolving a Rule 12(b)(2) motion, "a court may consider declarations, discovery, and uncontroverted allegations in the complaint." *Nationwide Agribusiness Ins. v. Buhler Barth GmbH*, No. 15-cv-00582, 2015 WL 6689572, at *3 (E.D. Cal. Oct. 30, 2015) (citation modified) (citing *ADO Fin., AG v. McDonnell*

*Douglas Corp.*, 931 F. Supp. 711, 714 (C.D. Cal. 1996)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint," courts must accept all uncontroverted allegations in the complaint as true and resolve any conflicts between the complaint and supporting declarations or affidavits in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800 (citation modified). Courts do not assume the truth of allegations in a pleading that are contradicted by affidavit or declaration. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

Consistent with these standards, the facts in this matter are taken from Plaintiff's Amended Complaint (Doc. 20), the submitted declarations (Docs. 27, 16-2–16-5), and other relevant jurisdictional evidence submitted by the parties. *See Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

## III. Discussion

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). In Montana, courts apply a two-step test to evaluate personal jurisdiction over a nonresident defendant. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015) (citing *Tackett v. Duncan*, 334 P.3d 920, 925–26 (Mont. 2014)). First, personal jurisdiction

must exist under Montana's long-arm statute, Montana Rule of Civil Procedure 4(b)(1). *Id.* Second, the exercise of personal jurisdiction must comport with "the traditional notions of fair play and substantial justice embodied in the due process clause." *Id.* (quoting *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003)).

The Court begins its analysis with Montana's long-arm statute. Rule 4(b)(1) subjects a nonresident party to general jurisdiction if they are "found within the state of Montana" and to specific jurisdiction "as to any claim for relief arising from the doing personally, or through any employee or agent, of" certain enumerated acts. Mont. R. Civ. P. 4(b)(1). Because Plaintiff does not contend that general jurisdiction exists, the Court limits its inquiry to specific jurisdiction.

Pertinent to this dispute, Rule 4(b)(1) permits specific jurisdiction over claims arising from either "the transaction of any business within Montana" or "entering into a contract for services to be rendered or for materials to be furnished in Montana by such person." *Id.* 4(b)(1)(A), (E). Under the long-arm statute, a nonresident "defendant is not subject to personal jurisdiction in Montana if [their] alleged conduct falls outside one of the enumerated categories, regardless of whether federal due process might otherwise be satisfied." *Groo v. Mont. Eleventh Jud. Dist. Ct.*, 537 P.3d 111, 126–27 (Mont. 2023) (McKinnon, J., dissenting); *see also Spectrum Pools Prods., Inc. v. MW Golden, Inc.*, 968 P.2d 728, 730 (Mont. 1998).

In determining whether to exercise specific personal jurisdiction, courts focus on the "relationship among the defendant, the forum, and the litigation." *Daimler AG*, 571 U.S. at 132–33 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Ultimately, specific jurisdiction "depends on whether the defendant's 'suit-related conduct' created a substantial connection with [Montana]." *Tackett*, 334 P.3d at 925 (citing *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). The Court therefore "considers the nature and extent of the nonresident defendant's contact with the state in relation to the claim or controversy alleged," *Sw. Distrib. Co. v. Mont. Nineteenth Jud. Dist. Ct.*, 562 P.3d 199, 205 (Mont. 2024), "not the entirety of the defendant's contacts with the forum," *Phila. Indem. Ins. v. O'Leary*, 557 P.3d 946, 954 (Mont. 2024). Factual findings regarding a defendant's broader, general contacts with the forum are "largely inapplicable," as the inquiry "demands specificity to the present litigation." *Id.*

These jurisdictional boundaries exist "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 285. "A [nonresident] defendant may only be haled into court in a forum state based on [their] own affiliation with [that] state." *Sw. Distrib. Co.*, 562 P.3d at 206. Thus, specific jurisdiction cannot rest "on the unilateral activity of a plaintiff or on the random fortuitous, or attenuated contacts the defendant has with other

persons affiliated with the state." *Tackett*, 334 P.3d at 928–29 (quoting *Walden*, 571 U.S. at 286).

In the Amended Complaint, Plaintiff asserts specific personal jurisdiction based on two components of Montana's long-arm statute: (1) the transaction of business in Montana and (2) a contract for services rendered in Montana. (Doc. 20 at 4). The Court examines both provisions in turn and concludes that Defendant's conduct satisfies neither.

*A. Transaction of Business in Montana*

Montana's long-arm statute subjects a nonresident defendant to specific personal jurisdiction if the claim for relief arises from "the transaction of any business within Montana." Mont. R. Civ. P. 4(b)(1)(A). In *Philadelphia Indemnity*, the Montana Supreme Court concluded that out-of-state attorneys and their law firm were not subject to specific personal jurisdiction in Montana under this prong. 557 P.3d at 954. Although a company retained the California-based defendants to provide an insurance coverage opinion relating to a Montana class action involving Montana insureds, the defendants performed all work in California, advised a plaintiff located in Pennsylvania, and mailed the formal denial-of-coverage letter from California to Ohio. *Id.* at 948. Neither attorney ever traveled to Montana, appeared in a Montana court for the matter, or communicated with anyone inside the state. *Id.* at 954.

While the district court correctly concluded that it lacked personal jurisdiction, it improperly premised its ruling on the defendants' general lack of presence in the state. *Id.* at 953–54. Specifically, the district court focused on the firm's lack of physical offices, advertisements, or Montana-licensed attorneys, noting that the defendant attorneys were not licensed there and the firm did not regularly conduct business or provide services in the state. *Id.* at 953.

The Montana Supreme Court affirmed the dismissal for lack of specific jurisdiction but rejected the district court's rationale, explaining that the lower court had conflated the analysis for general and specific personal jurisdiction. *Id.* at 954. Because the defendants transacted no business within Montana regarding the underlying litigation, generic contacts—such as the firm's general business presence or historical pro hac vice appearances—were "largely inapplicable" to the specific jurisdiction inquiry. *Id.*

In the present case, Plaintiff argues that "[i]t is undisputed that Defendant transacts business in Montana and a dispute with a partner in Montana managing that business certainly is a claim that 'arises out of' Defendant's business activities." (Doc. 26 at 16). In support, Plaintiff points to several indicators of Defendant's operational footprint in Montana during the relevant period: Defendant maintained law offices in Billings and Missoula in 2025 under Plaintiff's oversight; Defendant is registered to do business in the state; Defendant has engaged in other local

litigation; and Plaintiff previously served as Defendant's registered agent. (*Id.*; Doc. 20 at 1–3). Furthermore, Plaintiff notes that he managed substantial local legal operations and supervised more than a dozen individuals employed by Defendant within Montana. (Doc. 26 at 16).

Defendant does not dispute these facts and concedes that it maintains general business contacts with the state. (Doc. 25 at 12). However, none of these contacts satisfy the requirements of Rule 4(b)(1)(A). Plaintiff repeats the lower court's error in *Philadelphia Indemnity* by highlighting the firm's broad commercial operations rather than the specific conduct driving this litigation. Although providing legal services constitutes the "transaction of business," a nonresident defendant cannot be haled into a Montana court unless the plaintiff's underlying claims actually arise from that specific transaction. *Phila. Indem. Ins.*, 557 P.3d at 953–54. While Plaintiff previously provided legal services on Defendant's behalf in Montana, the current dispute does not stem from the provision of those services.

The Court agrees with Defendant that its general operations in Montana are entirely detached from this internal governance dispute involving a Colorado LLC. Defendant's alleged breach of contract—the specific suit-related conduct at issue—lacks any nexus to Montana. Defendant was formed under Colorado law, and the alleged breach arises from a corporate governance decision executed in Colorado stemming from the LLC's April 24, 2025 proposal, vote, and subsequent resolution.

(Doc. 20 at 1, 6; Doc. 25 at 7–9; Doc. 26 at 9–10). Pursuant to the governing operating agreement, the board meeting occurred within the State of Colorado. (*See* Doc. 15-1 at 10). The "yes" votes on the proposal were all cast from Missouri and Colorado, and the resolution was signed in Missouri and Colorado. (Docs. 16-2–16-5). No votes were cast from Montana, the resolution was executed outside of Montana, and all communications directed to Plaintiff regarding the proposal were handled electronically. (Docs. 16-2–16-5). Because this sequence of suit-related conduct took place entirely outside of the state, this internal corporate dispute does not arise from Defendant's business activities in Montana.

Consequently, Plaintiff's reliance on cases where the Montana Supreme Court found personal jurisdiction because nonresident defendants purposefully engaged in business within the state is misplaced. (Doc. 26 at 15–16 (citing *Prentice Lumber Co. v. Spahn*, 474 P.2d 141 (Mont. 1970); *B.T. Metal Works v. United Die & Mfg. Co.*, 100 P.3d 127 (Mont. 2004); *Sw. Distrib. Co.*, 562 P.3d at 206). These authorities are inapposite. Although Defendant has engaged in business operations within Montana, specific personal jurisdiction does not exist under Rule 4(b)(1)(A) because the out-of-state corporate resolution at issue does not arise from those transactions.

///

///

*B. Contract for Services in Montana*

Next, under Montana's long-arm statute, a defendant may be subject to specific jurisdiction if the claim arises from "a contract for services to be rendered . . . in Montana by such person." Mont. R. Civ. P. 4(b)(1)(E). Importantly, "a nonresident does not subject himself to the jurisdiction of Montana by merely entering into a contract with a resident of Montana." *Edsall Constr. Co. v. Robinson*, 804 P.2d 1039, 1042 (Mont. 1991).

In *Philadelphia Indemnity*, the Montana Supreme Court found jurisdiction did not exist over out-of-state defendants retained to provide an insurance coverage opinion and recommendations. 557 P.3d at 954–55. Although a contract existed, it lacked evidence of an agreement to perform services physically within the state. *Id.* at 955. The court distinguished between services "about Montana law" and "services to be furnished in Montana" and found no jurisdiction where there was "no delivery of services by the [defendants] within Montana." *Id.*

Plaintiff argues that Rule 4(b)(1)(E) "applies because this case involves a breach of contract." (Doc. 26 at 18). However, as Defendant notes, "not every contract satisfies Rule 4(b)(1)(E)." (Doc. 28 at 5). While the existence of a contract is undisputed, the agreement allegedly breached here is an LLC operating agreement governed by Colorado law, which defines it as an internal governance document dictating how members exercise their management rights and duties. Colo. Rev.

Stat. § 7-80-102 (2025); *Condo v. Conners*, 266 P.3d 1110, 1115 (Colo. 2011). It is not an employment contract or a purchase agreement. It does not require any member to provide legal services in Montana, nor does it provide compensation in exchange for such services.

Like the plaintiff in *Philadelphia Indemnity*, Plaintiff's argument fails because his allegations do not establish a contract to perform services within Montana. In fact, Plaintiff's position is even weaker: while the plaintiff in *Philadelphia Indemnity* actually contracted for services (albeit outside the forum), Plaintiff here fails to proffer any service contract from which his claim arises. As Defendant explains, "[P]laintiff's claim isn't about the legal services he did or did not perform. It's about his ownership share." (Doc. 28 at 7). The outcome would only differ if the operating agreement explicitly obligated Plaintiff to perform legal services in Montana in exchange for specific compensation.

Plaintiff attempts to bridge this gap by asserting that "Defendant does not dispute that it entered into this contract with a person who lived in Montana and that Plaintiff performed legal services under the business name of the Defendant in the State of Montana." (Doc. 26 at 19). This argument overlooks the nexus mandated by Rule 4(b)(1)(E). Defendant does not dispute that Plaintiff performed legal services in Montana, or that Defendant has previously entered into separate contracts for Montana-based legal services. (*See* Doc. 25 at 12). Rather, the fatal flaw is that

Plaintiff fails to establish a contract between himself and Defendant for legal services to be performed in Montana, much less a subsequent dispute arising directly from that agreement.

Furthermore, Plaintiff fails to point to any specific provision of the operating agreement that transforms it into a contract for legal services. Exhibit A merely outlines the members' respective ownership shares, and Article IX contains no guaranteed payment provision like the one Plaintiff claims. (*See* Doc. 15-1 at 15–16, 22).

Finally, Plaintiff's reliance on *Spectrum Pool Products* is misplaced. In that case, the court found jurisdiction proper because the defendant entered into an explicit contract with a Montana corporation to provide physical repair services within the forum and subsequently failed to pay. 968 P.2d at 731. Because there was an explicit contract to provide services within the forum, Rule 4(b)(1)(E) was satisfied. *Id.* Absent a contract for services to be performed in Montana, this Court cannot conclude that specific personal jurisdiction exists under Rule 4(b)(1)(E).

Because Defendant's conduct does not fall under Rule 4(b)(1)(A) or (E), the Court lacks specific personal jurisdiction and need not reach the due process analysis. *See Groo*, 537 P.3d at 126–27 ("A defendant is not subject to personal jurisdiction in Montana if her alleged conduct falls outside one of the enumerated categories, regardless of whether federal due process might otherwise be satisfied.").

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Knight Mackay Morrow, LLC's Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 25) is GRANTED. The above-captioned matter is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction. The Clerk of Court is directed to close the case.

DATED this 28th day of October, 2026.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge